STATE OF NORTH CAROLINA v. AMEEN KAREEM ABDULLAH

No. 552A82

(Filed 9 August 1983)

1. **Constitutional Law § 28— alleged coerced testimony—no violation of due process**

    Although the prosecutor sought tenaciously to encourage a witness's identification of defendant as the man who sold him a slain police officer's service revolver, defendant's murder conviction was not obtained in violation of due process because of the witness's identification testimony at trial where there was no evidence to suggest that the witness's testimony was perjured; the jury was fully apprised of the prosecutor's alleged coercive action and the witness was subjected to a vigorous and searching cross-examination; and the witness's testimony was cumulative and not vital to the State's case.

2. **Criminal Law § 102.7— jury argument—vouching for credibility of witnesses**

    Where defense counsel argued to the jury that the State had deliberately attempted to conceal evidence by refusing to call two named persons as witnesses, the prosecutor's jury argument that a lawyer vouches for the credibility of his witness and that a lawyer may not ethically put up a witness

State v. Abdullah

who he believes will lie was not grossly unfair or calculated to prejudice the jury since (1) the evidence showed that the State had justifiable reason for not calling the two witnesses, (2) the State was justified in explaining to the jury its failure to call these witnesses in the face of defense counsel's argument, and (3) the prosecutor's argument was supportable as a legally accurate general proposition.

**3. Criminal Law § 102.7— jury argument—necessity for testimony by co-conspirators**

Where defense counsel in a robbery-murder case argued that the testimony of three co-conspirators was highly suspect because each had testified in order to save his life, it was not improper for the prosecutor thereafter to argue that six people were involved in the crimes and that, while the three co-conspirators could easily be convicted on their confessions, their testimony, in return for sentence concessions, would ensure the conviction of the other three.

**4. Criminal Law § 102.6— misstatement in jury argument—absence of prejudice**

The prosecutor's misstatement in his jury argument that a co-conspirator's girlfriend testified that the co-conspirator took part in splitting the money from a robbery was not prejudicial error, although the girlfriend actually testified that the co-conspirator was not present when the proceeds were divided, since the misstatement had little bearing on defendant's guilt and was a mere perpetration of an inaccuracy already before the jury by way of defense counsel's argument.

**5. Criminal Law § 118— contention that testimony was false—refusal to instruct**

The trial judge did not err in refusing to give defendant's requested instruction on his contention that he had presented evidence tending to show that three co-conspirators who were State's witnesses had testified falsely.

**6. Criminal Law § 113.1— impeachment testimony—refusal to summarize**

The trial court in a robbery-murder case did not err in refusing to give defendant's requested instruction that defendant's evidence tended to show that a State's witness could not identify defendant in a lineup "after having stated [to the police] that she would know the person with the gun if she ever saw him again," since such evidence tended only to impeach other State's witnesses, and testimony which merely tends to impeach or show bias is not substantive in nature and need not be summarized.

**7. Criminal Law § 138— Fair Sentencing Act—pecuniary gain aggravating factor**

Since pecuniary gain was not an essential element of armed robbery or conspiracy to commit armed robbery, G.S. 15A-1340.4(a)(1) did not prohibit the trial court from considering the fact that the offenses were committed for pecuniary gain in imposing sentences for such offenses. However, pecuniary gain could not be considered as an aggravating circumstance in imposing sentences for such offenses where there was no evidence that defendant was hired or paid to commit the offenses.

8. **Criminal Law § 138— Fair Sentencing Act—armed with deadly weapon aggravating circumstance**

   The trial judge improperly relied on G.S. 15A-1340.4(a)(1)(i), *i.e.,* that the defendant was armed with a deadly weapon at the time of the crime, in enhancing his sentence for armed robbery, since the possession, use or threatened use of a firearm or other dangerous weapon is an essential element of the offense of armed robbery, and the use of such factor is thus proscribed by G.S. 15A-1340.4(a)(1). However, the trial court could rely on the fact that defendant was armed with a deadly weapon in imposing a sentence for conspiracy to commit armed robbery since such factor was not an element of conspiracy.

FROM judgments entered by *Ferrell, J.,* at the 7 June 1982 Criminal Session of Superior Court, MECKLENBURG County, defendant appeals his convictions of first degree murder, robbery with a firearm, and felonious conspiracy to commit robbery with a firearm. Pursuant to G.S. § 15A-2000(b), the jury recommended a sentence of life imprisonment on the first degree murder conviction. Upon findings of four aggravating factors pursuant to G.S. § 15A-1340.4(a)(1), defendant was sentenced to the maximum of forty years imprisonment on the armed robbery conviction and to the maximum of three years imprisonment on the conspiracy conviction. Defendant appeals as of right from the sentence of life imprisonment. G.S. § 7A-27(a). Motion to bypass the Court of Appeals on the robbery and conspiracy convictions was allowed 15 March 1983.

Defendant's assignments of error fall into two categories. With respect to the guilt determination phase of the trial, he alleges improper coercion of a State's witness to testify; prosecutorial misconduct in the State's closing argument to the jury; and failure of the trial judge to properly summarize the evidence. We find no error sufficiently prejudicial to warrant the granting of a new trial on these issues. Defendant further contends that the trial judge erred, under the Fair Sentencing Act, in imposing the maximum sentence upon the defendant for the armed robbery and conspiracy convictions. We agree that the trial judge improperly relied on two aggravating factors in imposing the maximum sentence for these convictions and remand that case for purposes of resentencing.

The facts necessary to resolve the issues presented will, for the most part, be discussed under the pertinent assignments of error. For purposes of background information, we add here only

that defendant's convictions arose out of the fatal shooting of police officer Edmond Cannon during the armed robbery of a Charlotte convenience store on 23 November 1981. Involved were the defendant and Mark Owens, who rode in one car driven by Charlie Brown, and John Martin and Antonio Randolph, who rode in a second car driven by Richard Washington. The evidence tended to show that the defendant, together with Owens and Randolph, entered the store after determining that the store clerk, Wendy Jenkins, was alone. After taking money from her, defendant forced Jenkins into a food cooler. During the course of the robbery, Officer Cannon entered the store. The defendant shot Officer Cannon twice, immobilizing him. After the officer had fallen, the defendant shot him three more times in the back. Defendant took the officer's service revolver.

Mark Owens, Antonio Randolph and Richard Washington testified for the State. Other witnesses for the State included Wendy Jenkins, the store clerk, several of defendant's acquaintances and relatives who heard him admit to the shooting, and a number of individuals who were in the area of the convenience store during and shortly after the robbery.

Defendant's evidence consisted of the testimony of twelve witnesses, the thrust of which was to impeach the credibility of the State's witnesses and to draw inconsistencies from, and inject uncertainty into the State's case.

*Rufus L. Edmisten, Attorney General, by Thomas F. Moffitt, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by James H. Gold and Ann B. Petersen, Assistant Appellate Defenders, for defendant-appellant.*

MEYER, Justice.

[1] Defendant first contends that he is entitled to a new trial because of the prosecutor's actions in allegedly coercing a witness, Clarence Buchanan, to identify the defendant as the man who sold him Officer Cannon's service revolver.

The evidence at trial tended to show that defendant, after killing Officer Cannon and taking the officer's revolver, together

with Owens and Randolph, fled the scene in the car driven by Washington. A short distance from the store, defendant threw Officer Cannon's revolver from the car window. The following day, 24 November 1981, Martin apparently retrieved the revolver and he, Owens, and the defendant traveled to Chester, South Carolina, for the purpose of selling both Officer Cannon's revolver and the murder weapon. In Chester, the three men met with Clarence Buchanan to whom defendant sold the weapons for $70.00. Buchanan gave the money to the defendant and an ounce of marijuana to Owens.

Police officers retrieved the two weapons from Buchanan on 23 December 1981 following confessions by Owens, Randolph and Washington, and took a statement from him on 30 December. Buchanan did not mention defendant by name in this statement. Police interviewed Buchanan again on either 13 or 14 January 1982, at which time Buchanan picked out only Owens' photograph from an array which also included a photograph of the defendant. On 26 January 1982 Buchanan failed to pick the defendant out of a corporeal lineup. In early March, Buchanan was interviewed by Charlotte Police Officer Crowell and Mecklenburg County Assistant District Attorney Richard Gordon. Buchanan reviewed his earlier statement and viewed a photograph of the 26 January corporeal lineup which included the defendant. He first stated that he did not recognize anyone in the lineup photograph. Gordon then pointed to the defendant in the photograph and identified him as Abdullah. He reminded Buchanan that he would be called upon to testify and asked him how he would respond when asked if that particular man in the photograph had sold him the guns. Buchanan then admitted that he recognized everyone in the photograph, including the defendant. He explained his earlier reluctance to identify the defendant by stating, "I didn't want to get involved. I have to live in the streets down here, and I just didn't want to get involved."

During voir dire, Gordon testified as follows:

I said, 'Well, are you picking him out just because I'm pointing him out to you?' He said, 'No, I recognize him.' I said, 'Are you picking him out just because you want to make me happy?' He said, 'No, I recognize him.' I said, 'Has anybody pointed him out to you before today and told you he's the man you're supposed to identify?' And he said, 'No.' I said, 'How come you didn't point him out to me on this picture

when I showed it to you a few minutes ago?' He said, 'I just didn't want to get involved. I didn't want to have to testify.' And I asked him at least twice more whether he was identifying this man because I pointed him out to him or whether he was identifying him from his house that day, from his kitchen, the twenty-fourth of November. He said, 'I recognize him from being in the kitchen that day.' I said, 'Do you feel like anybody has suggested to you this man should be identified and is that the reason why you're doing it?' I pressed him on that very closely because I knew this issue was going to come up, and he said, 'No, I'm identifying him because I recognize him.'

After hearing this evidence, the trial court found that Buchanan's identification was the result of his own observations on 24 November. Defendant's motion to suppress Buchanan's in-court identification of the defendant was denied.

Defendant argues that by his actions, Assistant District Attorney Gordon improperly interfered with Buchanan's "choice of whether or not to testify and with the content of his testimony." He asserts that Gordon's "interference" infringed upon his constitutional right to present witnesses to establish his defense. In support of his argument, defendant cites two cases in which the prosecutor or trial judge attempted to intimidate or otherwise discourage a *vital defense* witness from testifying on behalf of the defendant. These cases are inapposite. Correct analysis of this issue turns, rather, on the legal principles set forth in *State v. Montgomery*, 291 N.C. 235, 229 S.E. 2d 904 (1976); *accord State v. Williams*, 304 N.C. 394, 284 S.E. 2d 437; *cert. denied*, 456 U.S. 932, 72 L.Ed. 2d 450 (1982). In *Montgomery*, this Court said:

It is self evident that a denial of due process occurs when the State contrives a conviction by the knowing use of perjured testimony. However, when a witness testifies as to facts earlier obtained by coercive police action and all of the circumstances surrounding the alleged coercive acts are before the jury, the requirements of due process are met. It is then for the jury to determine the weight, if any, to be given to the testimony. *United States v. West*, 170 F. Supp. 200; 3 Wigmore, Evidence § 815 (Chadbourne rev. 1970); Annot., 3 L.Ed. 2d 1991, *Due Process—Perjured Testimony.*

291 N.C. at 240, 229 S.E. 2d at 907.

In *Montgomery,* the only evidence of police coercion was that police officers questioned several of the State's witnesses on several occasions and told them that they "could get ten years" if they lied under oath. The Court concluded:

> The evidence in this case reveals a tenacious investigation by the police officers but shows little evidence of coercive action against the witnesses, Dula, Shuford and Richards. Even had there been strong evidence of coercion, this record does not disclose that defendant's conviction resulted from the use of known perjured testimony. A full disclosure of the alleged coercive police action was before the jury. Under vigorous and searching cross-examination each witness steadfastly asserted the truth of the material facts.

> Under these circumstances, we hold that the evidence was admissible. Evidence of any police coercion or of contradictory statements and withholding of information on the part of the witnesses goes to their credibility. This, of course, is a jury question.

291 N.C. at 241, 229 S.E. 2d at 908.

Defendant concedes, and we are in agreement, that there is no evidence on this Record to suggest that Buchanan's testimony was perjured. While the State sought "tenaciously" to encourage Buchanan's identification of the defendant, as in *Montgomery,* the jury was fully apprised of the alleged coercive action and Buchanan was subjected to "vigorous and searching" cross-examination. Furthermore, Buchanan's testimony was cumulative and not vital to the State's case as it merely corroborated the testimony of Mark Owens that the defendant had accompanied Owens to South Carolina where they had sold the two weapons the day after the murder. We find no error.

We find further that Buchanan's in-court identification of the defendant as one of the men who sold him the guns was of independent origin based solely on what Buchanan saw at the time of the transaction. *See State v. Chatman,* 308 N.C. 169, 301 S.E. 2d 71 (1983).

Defendant next challenges portions of the prosecutor's remarks to the jury during closing argument, alleging that the

prosecutor personally vouched for the credibility of the State's witnesses and misstated the evidence bearing on the credibility of a State's witness. No objection was taken during the argument to these allegedly improper remarks. As we recently stated in *State v. Johnson,* 298 N.C. 355, 368-69, 259 S.E. 2d 752, 761 (1979):

> It is well settled in North Carolina that counsel is allowed wide latitude in the argument to the jury. *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503 (1970), *rev'd on other grounds,* 403 U.S. 948. Even so, counsel may not place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs and personal opinions not supported by the evidence. *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975). The control of the arguments of counsel must be left largely to the discretion of the trial judge, *State v. Britt, supra; State v. Monk, supra,* and the appellate courts ordinarily will not review the exercise of the trial judge's discretion in this regard unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations. *State v. Taylor,* 289 N.C. 223, 221 S.E. 2d 359 (1976). In capital cases, however, an appellate court may review the prosecution's argument, even though defendant raised no objection at trial, but the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it. *State v. Smith,* 294 N.C. 365, 241 S.E. 2d 674 (1978).

It is the State's position that the remarks were not improper and were in answer to matters argued by defense counsel and thereby "invited." Thus we turn to a review of the jury arguments, including that of defense counsel, to determine whether, in this context, the prosecutor engaged in conduct that was grossly unfair and calculated to mislead and prejudice the jury in its deliberations.

[2] Defense counsel, in a vigorous, well-organized and polished argument, developed, as one of the themes of the defense, that the State had deliberately attempted to conceal evidence by refusing to call as witnesses Larry Smith and John Benchina.

These witnesses testified for the defense and, with respect to what the killer was wearing at the time Officer Cannon was shot, their testimony was inconsistent with the State's theory.

Defense counsel argued as follows:

Isn't that a strange way to prosecute a case? You go out to figure out what happened on a given night, and you bring everybody in who can tell you something about it except two people who are independent, not co-defendants, not interested in anyone, not troubled, who could tell you what happened, who say the same night it happened exactly how it happened, and what do they do? They don't bring them at all. John Benchina and Larry Smith. . . . So everybody they could find who had something to say that they thought could fit their theory, they brought in and put them on the witness stand and let you hear them. Why then, why then, did they not bring in two people who had told them on the very night that it happened that they had seen it? The two men who had made a statement of what they had seen shortly after they saw it? Because they were operating on this theory that Mr. Abdullah was wearing a blue jacket and a blue hat, and if they got eyewitnesses who said, 'No, that's not what the killer had on,' they don't want you to hear that. So they leave them out altogether. Leave them out altogether. And who brought them in to tell you what they saw? We did.

In response, the State argued as follows:

A lawyer puts a witness up and vouches for his credibility, which means if I call that witness, I have got to believe what that witness says. A lawyer may not ethically put up a witness that he believes will lie.

The witness Benchina, who was driving the truck in which Smith was a passenger, saw much of what happened through the rearview mirror of the vehicle as he sped away from the scene. The witness Smith had a history of public drunkenness, drunken driving, and drug use. He had attempted to avoid being jailed after being arrested for ticket scalping by telling a Charlotte police officer that he was a key witness to the Cannon killing. He failed to attend lineups arranged to view suspects in this case and eventually fled Mecklenburg County because of pending criminal

charges. There was reason to believe that Officer Cannon had arrested Smith in 1978 for failure to appear in court on a marijuana charge.

In light of these facts, two conclusions readily emerge. First, the State had justifiable reason for not calling these two witnesses. Second, the State was justified in explaining to the jury its failure to call these witnesses in the face of defense counsel's insinuation that the failure was a deliberate attempt to conceal evidence. Furthermore, as a general proposition of legal accuracy, the prosecutor's remark is supportable. *See* 1 Brandis on North Carolina Evidence § 40 (2d rev. ed. 1982) (the State may not, as a general rule, impeach its own witness). We therefore hold that the alleged impropriety of this remark was neither grossly unfair nor calculated to prejudice the jury.

[3] Defense counsel persuasively argued in closing that the testimony of the three co-conspirators, Owens, Randolph, and Washington, was highly suspect as each had testified "to save his life . . . [w]hatever he needs to say, he's willing to say it." They were, in fact, characterized by defense counsel as "three desperate men who are seeking to save their own lives."

In response the prosecutor first pointed out that the crime was committed not by three, but by six individuals. He then stated "[a]nd so I, as the District Attorney, who has the responsibility for administration of justice in Mecklenburg County, I made the decision that we're going to try six men and not three men, even though three men may be easily convicted." Later, in the argument, the prosecutor added, "I don't want them to plead guilty. I want them to know, 'If you don't testify truthfully, you will go on trial for your life.' Certainly." These remarks, contends the defendant, amounted to the injection of an improper expression of the prosecutor's personal opinions into the jury argument. Defendant does not clearly articulate how he was prejudiced.

The prosecutor was merely attempting to legitimize what defense counsel had suggested was somehow an unfair and nefarious practice of resorting "to the criminals themselves for testimony with which to convict their confederates in crime." He did so by pointing out that while Owens, Randolph and Washington could easily be convicted on their confessions, their testimony, in return for sentence concessions, would ensure the

conviction of the other three. The argument was not unfair. It was not misleading. It was not prejudicial.

[4] Defense counsel, having attacked the testimony of the three co-conspirators, then suggested that, because the prosecution "obviously realized that that wasn't going to do it," it came up with Martin's girlfriend, Bernise Aldridge. The prosecutor's comments concerning Ms. Aldridge's testimony at trial forms the basis for defendant's final argument under this assignment of error. The prosecutor stated:

> John Martin's girlfriend got up here. Did she do anything to free John Martin? She got up here, and as I heard her testimony, she said, 'Yes, John Martin was with them. John Martin was splitting up money. John Martin was talking about what they had done.'
>
> . . . .
>
> Bernise Aldridge put her boyfriend in this thing just as deeply as anybody else, John Martin.

In so arguing, the prosecutor misstated the evidence. Ms. Aldridge testified that Martin was not present when the proceeds of the robbery were divided. Another witness placed Martin in the house at this time. The inaccuracy, however, was, in our view, not so prejudicial as to affect the outcome of the trial. Not only did it have little bearing on defendant's guilt, but it was merely a perpetration of an inaccuracy already before the jury by way of defense counsel's argument, summarizing Ms. Aldridge's testimony as follows:

> So she comes in and says that she went home about 11:00 or 11:30 from her aunt's house on the night of the twenty-third, and that she saw Harold Gordon there, and all these others there, *she said, Martin,* Abdullah, Owens, and *said she saw all of them there,* and then she only tells you what she heard Abdullah say. Everybody can remember everything Mr. Abdullah said.

(Emphasis added.)

In light of the foregoing, we do not find these arguments so improper as to persuade us to hold that the trial judge abused his discretion in not recognizing and correcting them *ex mero motu.*

[5]   By his third assignment of error, defendant raises two, but argues only one alleged error in the trial court's denial of defendant's request for an instruction to the jury relating to the recapitulation of the evidence and defendant's contentions. Defendant first requested that the trial judge state with respect to defendant's contentions concerning the testimony of the three co-conspirators who testified for the State, that they testified falsely. The trial judge declined to do so. No argument was presented on this point. We hold that the trial judge was entirely proper in this ruling. To hold otherwise would "open the door" to requiring at every phase of the instruction that a trial judge comment on the contentions of the parties concerning the veracity of witnesses testifying for the other party. We believe this practice is neither necessary nor advisable.

[6]   Defendant also requested that the trial judge instruct with respect to the testimony of Wendy Jenkins, the store clerk, that *"after having stated* [to the police] *that she would know the person with the gun if she ever saw him again,"* she "appeared and viewed the lineup in which the defendant appeared, but could not identify him." The italicized portion of this instruction, although requested, was not given.

We note initially that by statute, the trial judge must, in instructing the jury, "declare and explain the law arising on the evidence. He is not required to state the evidence except to the extent necessary to explain the application of the law to the evidence. . . ." G.S. § 15A-1232. Testimony which merely tends to impeach or show bias is not substantive in nature and need not be summarized. *State v. Adcox,* 303 N.C. 133, 277 S.E. 2d 398 (1981); *State v. Moore,* 301 N.C. 262, 271 S.E. 2d 242 (1980). Defendant attempts to argue that Ms. Jenkins's inability to identify the defendant is tantamount to substantive exculpatory evidence that defendant was not the gunman. We disagree. This evidence, fully explored during the cross-examination of Ms. Jenkins, served only to impeach the credibility of Owens and Randolph, the eyewitness co-conspirators, and other witnesses who testified to defendant's own admissions that it was he who murdered Officer Cannon. The trial judge properly denied defendant's request.

Defendant next contends that the trial judge violated the language of the Fair Sentencing Act, G.S. § 15A-1340.4, when he imposed the maximum sentences upon defendant's convictions of

conspiracy to commit armed robbery and armed robbery. Defendant challenges two of the four aggravating factors upon which he relied in imposing these sentences: (1) that the offense was committed for pecuniary gain, G.S. 15A-1340.4(a)(1)(c); and (2) that the defendant was armed with or used a deadly weapon at the time of the crime, G.S. § 15A-1340.4(a)(1)(i). Defendant argues that these factors were erroneously considered because evidence necessary to prove the elements of the offense was duplicated in proving these aggravating factors. G.S. § 15A-1340.4(a)(1).

[7] We first determine whether defendant is entitled to a new sentencing hearing on the armed robbery charge. In support of his position that the trial judge improperly relied on G.S. § 15A-1340.4(a)(1)(c), that the armed robbery was committed for hire or pecuniary gain, defendant cites to numerous cases filed by the Court of Appeals which have held that reliance on this factor was error. Beginning with *State v. Morris*, 59 N.C. App. 157, 296 S.E. 2d 309 (1982), the Court of Appeals has reasoned that "if the pecuniary gain at issue in a case is *inherent in the offense*, then that 'pecuniary gain' should not be considered an aggravating factor." *Id.* at 161-62, 296 S.E. 2d at 313 (emphasis added). *See State v. Thompson*, --- N.C. App. ---, 303 S.E. 2d 85 (1983); *State v. Thompson*, --- N.C. App. ---, 302 S.E. 2d 310 (1983); *State v. Setzer*, 61 N.C. App. 500, 301 S.E. 2d 107 (1983); *but see State v. Crews*, No. 829SC520 (N.C. App. filed Dec. 21, 1982), *cert. denied*, --- N.C. ---, 301 S.E. 2d 391 (1983). In *Crews*, the Court of Appeals, relying on *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981), found no error in the submission of this factor. In a footnote in *Morris*, the Court of Appeals had, however, distinguished our holding in *Oliver* by pointing out that "our capital punishment statute does not contain a statutorily mandated proscription against the use of evidence necessary to prove an element of the offense as does our Fair Sentencing Act." 59 N.C. App. at 161, 296 S.E. 2d at 312. In *Oliver*, defendants were convicted of first degree murder perpetrated during the course of an armed robbery. We held that "[t]he circumstance that the capital felony was committed for pecuniary gain, . . . is not an essential element . . . [of the offense];" and that "it is appropriate for [pecuniary gain] to be considered on the question of [defendant's] sentence" since "[t]his circumstance examines the motive of the defendant rather than his acts." 302 N.C. at 62, 274 S.E. 2d at 204.

While it is true that our capital punishment statute, G.S. § 15A-2000, differs from the Fair Sentencing Act in that the former does not include a proscription against the use of evidence necessary to prove an element of the offense, we are also bound by the language of G.S. § 15A-1340.4(a)(1) which states, in pertinent part, that "[e]vidence *necessary to prove an element of the offense* may not be used to prove any factor in aggravation. . . ." (Emphasis added.) By this language it seems clear that it is not the use of evidence which is merely "inherent in the offense" but the use of evidence *necessary to prove an element of the offense* which is proscribed. It is also equally clear that pecuniary gain is not an essential element of the crime of armed robbery. Those elements include (1) the unlawful taking, or attempted taking of personal property from another; (2) the possession, use of threatened use of "firearms or other dangerous weapon, implement or means"; and (3) danger or threat to the life of the victim. *See State v. Joyner*, 295 N.C. 55, 243 S.E. 2d 367 (1978). Thus, if defendant's sole argument was based on the assumption that the aggravating factor, pecuniary gain, is an essential element of armed robbery and thereby precluded under G.S. § 15A-1340.4 (a)(1), his argument would fail.

However, defendant further argues that the correct interpretation of G.S. § 15A-1340.4(a)(1)(c) precludes the use of this aggravating factor in any circumstance other than when a defendant is hired or paid to commit the offense. In support of this interpretation, defendant points to 1983 Session Law, Chapter 70, which, effective 1 October 1983, would amend G.S. § 15A-1340.4 (a)(1)(c), changing the present language that "[t]he offense was committed for hire or pecuniary gain" to "[t]he defendant was hired or paid to commit the offense." Significantly, the amendment was styled "An Act to *Clarify* the Aggravating Factor Regarding Pecuniary Gain." (Emphasis added.)

Judge Becton, in *State v. Thompson*, recently discussed the effect of the amendment:

That amendment, in our view, clearly evinces the Legislature's intent to avoid the enhancement of a defendant's sentence simply because money or other valuable items were involved in the crime charged. Bound as we are fairly to interpret legislative enactments, and charged both to divine

and carry out the intent of the Legislature, we are compelled to hold that the trial court erred in considering pecuniary gain as a factor in aggravation of defendant's sentence.

--- N.C. App. at ---, 303 S.E. 2d at 86.

We find this reasoning sound and therefore hold that in the case sub judice, where there is no evidence that defendant was hired or paid to commit the crime, the trial court improperly relied on G.S. § 15A-1340.4(a)(1)(c) in sentencing defendant in the armed robbery.

[8] Furthermore we agree with the defendant that the trial judge improperly relied on G.S. § 15A-1340.4(a)(1)(i), *i.e.*, that the defendant was armed with or used a deadly weapon at the time of the crime, in enhancing his sentence for armed robbery. One essential element necessary to prove the offense of armed robbery is that of the possession, use or threatened use of a firearm or other dangerous weapon. Thus the use of this factor is proscribed under G.S. § 15A-1340.4(a)(1). *State v. Thompson*, --- N.C. App. ---, 302 S.E. 2d 310; *State v. Brooks*, --- N.C. App. ---, 301 S.E. 2d 421 (1983).

With respect to the use of the aggravating factor of "pecuniary gain" in sentencing on the conspiracy charge, the State notes correctly that:

A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. The conspiracy is the crime and not its execution. No overt act is necessary to complete the crime of conspiracy. As soon as the union of the wills for the unlawful purpose is perfected, the offense of conspiracy is complete. *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975).

It is apparent that the elements of the crime of conspiracy to commit armed robbery do not include the commission of the crime for pecuniary gain *or* possession or use of a deadly weapon at the time of the crime. However, in light of our adoption of the interpretation given G.S. § 15A-1340.4(a)(1)(c), as amended, and because there is no evidence that defendant was hired or paid to commit

this crime, we hold that the trial court improperly relied on this factor in enhancing defendant's sentence in the conspiracy case. We find no error in the trial court's reliance on G.S. § 15A-1340.4 (a)(1)(i), that defendant was armed with a deadly weapon at the time of the crime.

Defendant's convictions for first degree murder, armed robbery and conspiracy to commit armed robbery are affirmed. The armed robbery and conspiracy cases are remanded to Superior Court, Mecklenburg County, for resentencing.

Case No. 81CRS85033, First Degree Murder—no error.

Case No. 81CRS85034, Robbery with a Firearm—remanded for resentencing.

Case No. 82CRS3027, Felonious Conspiracy to Commit Robbery with a Firearm—remanded for resentencing.