STATE OF NORTH CAROLINA v. JAMES HENRY MURRAY

No. 11A83

(Filed 3 April 1984)

1. **Constitutional Law § 62; Criminal Law § 135.3— first degree murder—death qualification of jurors—no denial of fair trial**

    The procedure of "death qualifying" the jury in the guilt-innocence phase of a first degree murder trial did not result in a guilt prone jury so as to deprive defendant of a fair trial.

2. **Criminal Law § 117.4— instruction on accomplice testimony—no plain error**

    Error, if any, in the trial court's instruction prior to an accomplice's testimony that the jury should examine such testimony with great care and caution if it found that the accomplice testified for the State in exchange for a charge reduction did not constitute "plain error" so as to permit appellate review of the instruction even though defendant failed to object thereto at the trial, since a cautionary instruction was not required at all prior to the accomplice's testimony where the accomplice had not been formally granted immunity, and since the jury was sufficiently instructed to consider the accomplice's testimony carefully in light of his possible bias.

**3. Criminal Law § 26.5— convictions of armed robbery and larceny—no double jeopardy**

Defendant was not twice placed in jeopardy for the same offense when he was tried and convicted for both the armed robbery of the victim by taking his wallet and keys and the felonious larceny of the victim's automobile since each crime charged contained an element not required to be proved in the other.

**4. Criminal Law § 86.2— circumstances of prior convictions of defendant**

The prosecutor was properly permitted to cross-examine defendant about prior convictions by asking whether defendant had been convicted on certain dates of particular crimes involving specified conduct against named persons.

**5. Criminal Law § 169.3— admission of evidence—error cured by other evidence**

Where evidence is admitted over objection, but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost.

**6. Criminal Law § 162— admission of evidence not plain error**

In a prosecution for first degree murder, armed robbery and felonious larceny, error, if any, in the admission of testimony concerning defendant's live-in relationship with two women and his failure to support his illegitimate children was not such "plain error" as would have had a probable impact on the jury at trial.

**7. Criminal Law §§ 33.2, 162— evidence of motive—no plain error**

In a prosecution for first degree murder, armed robbery and felonious larceny, cross-examination of defendant regarding his lack of employment and income prior to the crimes, if error, was not sufficiently prejudicial to warrant a finding of "plain error."

**8. Criminal Law § 102.10— jury argument concerning defendant's prior convictions**

The prosecutor's jury argument concerning defendant's prior convictions and defendant's release from prison on 17 December and his subsequent killing of the victim on 28 December did not improperly imply that defendant's prior convictions should be considered as substantive evidence of defendant's guilt of the crimes charged where the prosecutor repeatedly reminded the jury that such evidence was to be considered only in evaluating defendant's credibility, and where the references to defendant's release from prison and his subsequent killing of the victim were supported by competent evidence.

**9. Criminal Law § 138— pecuniary gain aggravating circumstance**

The trial court erred in finding as an aggravating circumstance that a larceny was committed for pecuniary gain where there was no evidence that the larceny was committed for hire. G.S. 15A-1340.4(a)(1)(c).

Justice MARTIN concurring.

BEFORE *Stevens, Judge,* presiding, a jury found the defendant guilty of first degree murder, armed robbery, and felonious

larceny of an automobile. Judgment was entered on October 4, 1982 in Superior Court, NEW HANOVER County. The defendant was sentenced to life imprisonment on the murder conviction and to ten years on the conviction for felonious larceny, to begin at the expiration of the life sentence. Judgment was arrested on the armed robbery conviction. The defendant appealed his conviction and life sentence for murder directly to the Supreme Court as a matter of right pursuant to G.S. 7A-27(a). The Supreme Court allowed the defendant's motion to bypass the Court of Appeals on the larceny conviction on September 9, 1983. Heard in the Supreme Court on December 12, 1983.

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Marc D. Towler, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

Through several assignments of error, the defendant contends the trial court committed error in a cautionary instruction to the jury and in allowing certain cross examination and argument by the State. The defendant also argues that his convictions for both armed robbery and felonious larceny violated his constitutional right to be free from double jeopardy. We find no merit in these assignments of error.

The defendant's convictions arose out of events which occurred on December 28, 1981 and which resulted in the death on the following day of Kauno Lehto, aged 70, owner of the Wilmington Bonded Warehouse. Four men were indicted for the offense and two defendants, Ricky Benbow and Lorenzo Thomas, agreed to testify at the trial of the defendant. In exchange for his testimony, Benbow was allowed to plead guilty to second degree murder. *See State v. Benbow*, 309 N.C. 538, 308 S.E. 2d 647 (1983) for a more detailed recitation of the facts surrounding the case.

At the trial of the defendant, the evidence for the State tended to show that the defendant and three other men, Benbow, Thomas and Freddy Stokes, met in the late afternoon of December 28, 1981 and agreed to go to the Wilmington Bonded Warehouse to rob Lehto, the warehouse owner. The evidence tended to

show that the men went to the warehouse on foot just as darkness fell and that Stokes and the defendant carried sticks. When they arrived at the warehouse, Stokes and the defendant positioned themselves on either side of the ramp which led into the office portion of the warehouse, while the other two men served as lookouts. Lehto emerged from the office between 6:05 and 6:15 p.m. on December 28. Both witnesses testified that Stokes took Lehto down the ramp and, along with the defendant, appeared to struggle with Lehto and to go through his pockets. Benbow testified that, when Stokes came down the ramp leading into the office, Stokes had the keys to Lehto's car which was parked at the foot of the ramp. The defendant, Stokes and Benbow got in the car and drove it away. Thomas testified that Stokes gave him marijuana for his participation in the robbery and that Stokes told the other two men that they would split the money.

Friends of Lehto's family found Lehto on the ramp of his warehouse at about 8:15 p.m. on December 28 after he failed to appear at home at his usual time. When they found him, Lehto's face was beaten beyond recognition and covered with blood. Lehto died the following morning in a hospital. An autopsy revealed that he had died of head injuries and brain swelling caused by blows with a blunt or semi-sharp object.

The defendant's evidence tended to show that, on December 28, 1981, he lived with his mother in Wilmington. He had been released from prison on December 17, 1981 after serving eight months of a two year prison sentence for assault. The defendant Murray denied that he saw Stokes, Benbow and Thomas on the night of December 28, 1981. Murray also denied beating or robbing Kauno Lehto or stealing his car on that night. Murray and alibi witnesses testified that from mid-afternoon until about 7:00 or 7:30 p.m. on December 28 the defendant was upstairs in his mother's home. He testified that after arriving at the home in mid-afternoon he did not leave the house again that day.

[1] In his first assignment of error, the defendant contends that the procedure of "death qualifying" the jury in the guilt-innocence phase of his trial deprived him of his right to a fair trial. Although the defendant received a life sentence in this case, his trial began as a capital case and the jury was selected pursuant to G.S. 15A-2000(a)(2). The defendant maintains that the procedure

of death qualifying a jury results in a guilt prone jury. We have found this argument to be without merit on numerous occasions, and we now reaffirm our previous holdings. *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203, *cert. denied,* 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed. 2d 622 (1982), *reh'g denied,* --- U.S. ---, 103 S.Ct. 839, 74 L.Ed. 2d 1031 (1983); *State v. Avery,* 299 N.C. 126, 261 S.E. 2d 803 (1980); *accord Hutchins v. Woodard,* No. 84-8050 (4th Cir. March 13, 1984); *Barfield v. Harris,* 540 F. Supp. 451 (E.D.N.C. 1982), *aff'd* 719 F. 2d 58 (4th Cir. 1983). *Contra Keeten v. Garrison,* No. CC-77-193-M (W.D.N.C. Jan. 12, 1984).

[2]   The defendant next assigns as error the trial court's instructions before the testimony of Richard Benbow, one of the two accomplice witnesses who linked the defendant to the crimes. Immediately prior to Benbow's testimony the court instructed the jury as follows:

> Now, members of the jury, the court instructs you that the testimony of this witness, Richard Benbow, is given under an agreement with the prosecution whereby the witness has agreed to testify for the State in exchange for a charge reduction. If you find that the witness testified in whole or in part for this reason, you should examine every part of his testimony with great care and great caution in deciding whether or not to believe him.

The defendant contends the court should have instructed the jury that Benbow was in fact testifying because of a plea agreement and that the jury was required to consider his testimony with care. In support of his argument, he cites *State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977) and *State v. Harris,* 290 N.C. 681, 228 S.E. 2d 437 (1976) in which this Court held that instructions at the close of the evidence which directed the jury to consider the witness's testimony with caution only if it found the witness to be an accomplice were erroneous.

The defendant did not object to this instruction at trial. As we have stated on numerous occasions, failure to object to errors at trial constitutes a waiver of the right to assert the errors on appeal. *State v. Oliver,* 309 N.C. 326, 307 S.E. 2d 304 (1983). In *State v. Odom,* 307 N.C. 655, 300 S.E. 2d 375 (1983) we adopted the "plain error rule" with regard to situations in which no objection or exception is made at trial to jury instructions. In *State v.*

*Black,* 308 N.C. 736, 303 S.E. 2d 804 (1983), we adopted the plain error rule for the situations in which no objection or exception is made to evidence admitted. Absent an exception preserved by objection or which by rule of law is deemed preserved, our review is limited to determining whether plain error was committed at trial. We have stated that plain error will be found

> in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can fairly be said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom,* 307 N.C. at 660, 300 S.E. 2d at 378 (quoting *United States v. McGaskill,* 676 F. 2d 995, 1002 (4th Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 381, 74 L.Ed. 2d 513 (1982) (emphasis original)).

Assuming for the sake of argument that the trial judge's cautionary instruction was error in this case, the mistake did not reach the level of plain error. The instruction was not required at all prior to Benbow's testimony. Unless a witness has been formally granted immunity there is no statutory requirement for any such cautionary instruction prior to testimony. *State v. Bare,* 309 N.C. 122, 305 S.E. 2d 513 (1983). Furthermore, in *Hardy* and *Harris,* cases cited by the defendant, we found similar instructions to be harmless. We note, too, that the trial court in its charge to the jury at the close of all of the evidence instructed that Thomas and Benbow were accomplices, and that the jury "should examine every part of the testimony of each of these witnesses with the greatest care and caution in deciding whether or not to believe him." The jury was clearly instructed to consider Benbow's testimony carefully in light of his possible bias. While we detect no error, any possible error certainly did not rise to the level of having "a probable impact on the jury's finding that the defendant was

guilty." *State v. Odom,* 307 N.C. at 660, 300 S.E. 2d at 378. This assignment of error is rejected.

[3] The defendant next contends that he was twice placed in jeopardy for the same offense in violation of his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 19 of the Constitution of North Carolina. He claims that because he was charged and tried for both the armed robbery of Lehto by taking his wallet and keys and the felonious larceny of Lehto's automobile, he was twice placed in jeopardy for the same offense.

The protections against double jeopardy provide that a person may not be unfairly subjected to multiple trials for the same offense. Nor may a defendant be punished twice for the same statutory offense. *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203, *cert. denied,* 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed. 2d 622 (1982), *reh'g denied,* --- U.S. ---, 103 S.Ct. 839, 74 L.Ed. 2d 1031 (1983). A person's right to be free from double jeopardy is violated not only when he is tried and convicted twice for the same offense but also when one is charged and convicted for two offenses, one of which is a lesser included offense of the other. *See State v. Walden,* 306 N.C. 466, 293 S.E. 2d 780 (1982).

The defendant argues that the taking of the car in this case was actually a part of the armed robbery and that he was therefore tried for two crimes arising out of the same transaction. Since the defendant was tried for both offenses at a single trial, his objection, presumably, is that he has been subjected to multiple punishments for the same offense.

We note that the Supreme Court of the United States has held that, where a legislature clearly expresses its intent to proscribe and punish exactly the same conduct under two separate statutes, a trial court *in a single trial* may impose cumulative punishments under the statutes. *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed. 2d 535 (1983). We need not rely on *Hunter* here, however, since it is clear for other reasons that the defendant's protections against double jeopardy were not violated.

In a case involving facts very similar to this case, we have held that a defendant's protections against double jeopardy were not violated. In *State v. Revelle,* 301 N.C. 153, 270 S.E. 2d 476

(1980) the defendant was also tried and convicted of armed robbery and felonious larceny of an automobile after he took money and wallets from the inhabitants of a trailer before going outside and taking their car. This Court ruled that the crimes in that case represented separate actions by the defendant and held that, even where evidence to support two or more offenses overlaps, double jeopardy does not occur unless the evidence required to support the two convictions is identical. If proof of an additional fact is required for each conviction which is not required for the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same. *State v. Perry*, 305 N.C. 225, 287 S.E. 2d 810 (1982).

In this case each crime charged contains an element not required to be proved in the other. The elements of armed robbery under G.S. 14-87 and our case law are:

> (a) the unlawful taking or attempted taking of personal property from another person or in his presence;

> (b) by use or threatened use of a dangerous weapon, implement or means;

> (c) whereby the life of a person is endangered.

*State v. Beaty*, 306 N.C. 491, 293 S.E. 2d 760 (1982); *State v. Porter*, 303 N.C. 680, 281 S.E. 2d 377 (1981).

To convict for the crime of larceny there must be proof that a defendant

> (a) took the property of another;

> (b) carried it away;

> (c) without the owner's consent; and

> (d) with the intent to deprive the owner of his property permanently.

*State v. Perry*, 305 N.C. 225, 287 S.E. 2d 810 (1982). Larceny of goods having a value of more than $400.00 is a felony. G.S. 14-72(a).

It is clear then, that here at least one essential element of each crime is not an element of the other. We find no merit,

therefore, in the defendant's contentions that he was subjected to double jeopardy.

The defendant also assigns as error portions of the prosecutor's cross examination of him at trial. The defendant concedes that he did not object to most of the portions of the cross examination of which he now complains. The defendant contends he is nonetheless entitled to a new trial because of the questioning. Because the defendant failed to object to most of the cross examination, we must examine the portions of the record complained of for plain error. We find none.

[4] The defendant contends that three types of questions propounded to him by the prosecutor were improper. First, the defendant objects to questions concerning his prior convictions, claiming the prosecutor went beyond the proper limits of cross examination and attempted to use the convictions as substantive evidence of guilt. The questioning is fairly represented by the following excerpt from the transcript:

Q. And on the same day, the 26th of April, 1976, were you convicted of assaulting Nathanial Mosely, by hitting him with your fists?

A. Yes, I was.

Q. On the 18th of April, 1976 were you convicted of assaulting Linda Diane Andrews by hitting her with your hands and fists?

A. Yes, sir.

Q. On the 18th of April, 1978, were you convicted of communicating threats by threatening to kill Wayne Watkins, and blow up his store?

A. No, sir. I got charged with it, but I didn't do that. I got probation on that, but I didn't do that.

Q. Well, were you convicted of that?

A. I was with some friends, I guess yeah.

Q. You were with some friends so you got convicted with them?

A. Yes, sir.

State v. Murray

* * *

Q. On the 18th of April, 1978, were you convicted of malicious damage to real property by breaking windows with an iron brace?

A. Yes.

Q. And on the 18th of April, 1978, were you convicted of malicious damage to the personal property of Rusty Butler, and assaulting George Dooer by striking him on the arm with an iron brace?

A. Same charge, yes, sir.

* * *

Q. On the 20th of November, 1974 were you convicted of unauthorized use of a motor vehicle?

A. Yes, sir. That's the same charge, yes, sir.

Q. Was that the taking of a 1963 Chevrolet from Odell Patterson?

A. Yes, sir.

* * *

Q. On the 22nd of July, 1981, July a year ago, were you convicted of assault with a deadly weapon inflicting serious injury by beating Charles Elbert Corbett on the head with a pistol on April the 11th, 1981?

A. Yes, sir.

Q. And you were sentenced to prison for that, is that correct?

A. Two year sentence.

Q. And did you, in fact, hit Charles Elbert Corbett on the head with that pistol?

A. No, sir.

Such questions were proper, and the trial court did not err by allowing them. A criminal defendant who elects to testify in his own behalf is subject to questions relating not only to his con-

victions for crimes but also to prior acts of misconduct which tend to discredit his character or challenge his credibility. *State v. Foster*, 293 N.C. 674, 239 S.E. 2d 449 (1977).

The defendant also complains that the prosecutor was permitted to question him in unnecessary detail instead of limiting his inquiry to the time, place and punishment for the defendant's convictions. We have stated that, rather than phrasing questions only in terms of convictions, the prosecutor may ask about the circumstances of a prior conviction in the same way he would ask about any specific prior misconduct. *State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972). In *Mack* this Court ruled that such questions related to matters within the witness's knowledge and, when asked in good faith, were permissible. *See also State v. Lynch*, 300 N.C. 534, 268 S.E. 2d 161 (1980).

The prosecutor's questions clearly were proper. We note, too, that the trial court in this case properly instructed the jury that the evidence of prior convictions went only to the credibility of the defendant.

The defendant also claims the prosecutor's questions regarding the defendant's relationship with various women and his failure to support his illegitimate children were improperly allowed. The testimony responsive to the questioning revealed that the defendant had a live-in relationship with two women, that he had three illegitimate children and that he paid no support for the children or their mothers.

[5]  The defendant made a general objection to three of the questions. They concerned why one of the women had moved out of the defendant's mother's home, how many times the defendant slept with one woman, and how one of the three children was supported. The defendant objected, however, to only three questions out of more than thirty similar ones. This Court has long held that where evidence is admitted over objection, but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost. *See State v. Corbett*, 307 N.C. 169, 297 S.E. 2d 553 (1982); *State v. Reynolds*, 307 N.C. 184, 297 S.E. 2d 532 (1982); 1 *Brandis on North Carolina Evidence* § 30 (1982).

[6]  The defendant has not shown that the error, if any, was such plain error as would have had a probable impact on the jury at trial. After thorough examination of the evidence presented against the defendant, we do not find a reasonable probability that the testimony concerning his relationship with women and his illegitimate children "tilted the scales" in favor of his conviction. *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983).

[7]  The defendant argues that the cross examination regarding his lack of employment and income prior to these crimes was improper because it implied a motive for robbery. The defendant objected when the prosecutor asked how much he had paid a year and a half before for a black blazer that he said he wore on the morning of the crime. The objection was overruled and the defendant answered, "$69.00." The remainder of the questions about income or financial status were admitted without objection.

This Court has held that generally such questioning is not considered improper. *State v. Ham*, 224 N.C. 128, 29 S.E. 2d 449 (1944); *State v. Cain*, 175 N.C. 825, 95 S.E. 930 (1918). Even if such questioning was error, the defendant has not shown that the admission of the evidence of lack of employment or money was sufficiently prejudicial to warrant a finding of plain error. Two witnesses gave eyewitness accounts of the defendant's involvement in the robbery and murder. We hold that the trial court's error, if any, did not create a reasonable probability that the testimony had an impact on the jury's verdict, and there was no plain error.

[8]  The defendant finally argues that the prosecutor's argument at the close of the evidence improperly inferred that the defendant's prior convictions should be considered as substantive evidence of the defendant's guilt of the charged offenses. The prosecutor argued in pertinent part:

> . . . and again a person's record is to be considered by you in determining whether they're credible, whether they're believable.

> The Judge will tell you, and I will tell you, you can consider a person's record for one purpose, to determine whether or not that person is believable; his credibility.

You know, something significant happened in this case on the 17th of December, 1981 when the prison authorities let that man out of prison. The evidence shows that they let him out the 17th of December, 1981. What happened? The 28th of December, 1981, he's already killed a man, killed Mr. Kauno Lehto.

Later in the same argument the prosecutor urged the following:

A person's record is to be considered in considering his credibility, whether they are believable. You heard the things he admitted being convicted of. On the 17th of December he got out of prison. He had been convicted of beating a man in the head with a pistol. Beating a man in the head with a pistol. That goes to his credibility. You heard him admit other assaults that he had been convicted of. That goes to his credibility. Have you heard of Thomas being convicted of assault? Have you heard of Ricky Benbow being convicted of assault? You know, their convictions were for stealing things, but it goes to their credibility. Who had you heard being convicted of assaults? Why that defendant; beating a man in the head with a pistol. Convicted of an assault with a deadly weapon inflicting serious injury, and other assaults you heard about.

The argument of counsel must be left largely to the control and discretion of the presiding judge. Counsel for both sides are entitled to argue the law and facts in evidence and all reasonable inferences to be drawn therefrom. *State v. Lynch*, 300 N.C. 534, 268 S.E. 2d 161 (1980). Counsel may not argue to the jury incompetent and prejudicial matters, however, and may not "travel outside the record" by inserting facts not in evidence. *State v. Forney*, 310 N.C. 126, 310 S.E. 2d 20 (1984).

The defendant did not object to the arguments he now contends were erroneously allowed. Upon failure to object to statements made in closing arguments, the standard we employ is whether the statements amounted to such gross impropriety as to require the judge to act *ex mero motu. State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983); *State v. Craig*, 308 N.C. 446, 302 S.E. 2d 740, *cert. denied*, 104 S.Ct. 263, 78 L.Ed. 2d 247 (1983).

When he took the stand the defendant put his credibility in issue. The prosecutor could properly impeach his credibility by eliciting testimony about prior convictions. In reminding the jury of the defendant's prior convictions, the prosecutor also repeatedly reminded them that the evidence was to be considered only in evaluating the defendant's credibility. Furthermore, the prosecutor's references to the defendant's release from prison on December 17, 1981 and to his subsequent killing of a man by December 28 were supported by competent evidence. The defendant testified to the date of his release from prison, and two witnesses testified to his part in the crime on December 28. There was no error at all in the prosecutor's argument and clearly none so grossly improper as to require the trial court's intervention *ex mero motu*. We find the defendant's contentions in this regard to be without merit.

[9] As his final assignment of error, the defendant contends that in the sentencing phase of the trial the trial court improperly found as an aggravating circumstance that the defendant committed the larceny charged for hire or pecuniary gain. G.S. 15A-1340.4(a)(1)(c). The State has conceded that there was no evidence that the larceny in this case was committed for hire. As a result of our holding in *State v. Abdullah*, 309 N.C. 63, 306 S.E. 2d 100 (1983), without such evidence, the finding of the aggravating factor is error. Under our ruling in *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983), the larceny conviction must be remanded for a new sentencing hearing.

In summary we find no error in the guilt-innocence phase of the trial, and we remand the larceny conviction to the Superior Court, New Hanover County, for a new sentencing hearing.

Case No. 82CRS10111 — Larceny — remanded for resentencing.

Case No. 82CRS10109 — Murder — no error.

Justice MARTIN concurring.

I concur in the excellent opinion by Justice Mitchell, except in the application of the "plain error" rule to alleged evidentiary errors. I remain convinced that this rule should not be applied to

evidentiary questions, for the reasons stated in *State v. Black,* 308 N.C. 736, 744, 303 S.E. 2d 804, 809 (1983) (Martin, J., concurring).