Margie Bullard BARFIELD, Appellant,

v.

Kenneth W. HARRIS, Supt., N.C. Correctional Center for Women; Rufus L. Edmisten, Attorney General of N.C., Appellees.

No. 82–6424.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1983.

Decided Oct. 3, 1983.

Rehearing and Rehearing En Banc
Denied Nov. 22, 1983.

Richard H. Burr, III, West Palm Beach, Fla. (James D. Little, Singleton, Murray, Harlow & Little, Fayetteville, N.C., on brief), for appellant.

Richard N. League, Sp. Deputy Atty. Gen., Thomas F. Moffitt, Asst. Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N.C., on brief), for appellees.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

This is an appeal from a denial of habeas corpus relief to the petitioner who had been sentenced to death after a conviction of

murder by arsenic poisoning. In the guilt phase of the trial, evidence was introduced that she had similarly murdered four other persons, including her mother and former husband. Indeed, she admitted that she had poisoned all of them except her former husband.

The penalty phase of the trial was conducted before the same jury immediately after the verdict of guilty. The principal question on appeal is whether the jurors' knowledge of her former crimes impermissibly infected their decision to impose the death penalty since former criminal conduct is not a statutory aggravating circumstance in North Carolina. Another substantial question is whether or not the Supreme Court of North Carolina adequately performed its statutory duty to conduct a proportionality review of the sentence.

## I.

During the guilt phase of her trial, Margie Barfield took the stand in her own defense. She admitted having put arsenic laden Terro Ant Poison in the food of the victim, Taylor. She protested, however, that she had not intended to kill Taylor. Earlier she had forged some checks on Taylor's bank account, a fact Taylor discovered when his cancelled checks were returned with his bank statement. He threatened to report her to the police if she did it again. She did it again, and was fearful that he would discover that later transgression. Hence, she wished to make him ill enough that he would not review his cancelled checks but did not wish to kill him.

In response, the prosecutor introduced evidence of the death by arsenic poisoning of the other four persons. Indeed, there was received in evidence a confession in which she admitted poisoning three of those persons, including her mother, though she denied that she had poisoned her former husband. All four bodies had been exhumed, and autopsies had disclosed that each had

died of arsenic poisoning. With respect to Taylor and the other victims except the former husband, there was testimony of intense, prolonged suffering before death brought release.

The evidence of the former poisonings was received for the limited purpose of supporting the prosecutor's case that Barfield intended to kill Taylor.

The prosecutor produced no additional evidence during the penalty phase of the trial, but the defendant introduced some testimony to show her habitual overuse of prescription drugs and her need of money with which to obtain them.

At the close of the sentencing hearing, the court instructed the jury that it could consider three aggravating factors: (1) whether the murder was committed for pecuniary gain, N.C.G.S. § 15A–2000(e)(6); (2) whether it was designed to hinder enforcement of the law, N.C.G.S. § 15A–2000(e)(7); and (3) whether the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A–2000(e)(9). The jury was further instructed to consider two mitigating circumstances: (1) whether the defendant committed the murder while under the influence of a mental or emotional disturbance, N.C.G.S. § 15A–2000(f)(2); and (2) whether the defendant possessed an impaired capacity to appreciate the criminality of her conduct or to conform her conduct to the requirements of law, N.C.G.S. § 15A–2000(f)(6). The jury was invited to consider any other circumstances it might deem to have mitigating value. In determining what aggravating and mitigating factors were present, the jury was told that it could consider "all evidence heard in both phases of the case."

The jury found beyond a reasonable doubt that all three aggravating factors were present, and that there were no mitigating circumstances.[1] In writing, the jury

---

1. The jury did not answer the invitation to list "other circumstances which the jury deems to have mitigating value." The more reasonable inference is that the jury found no such other mitigating circumstances. The failure of the

jury affirmatively to disclose they had found no such other mitigating circumstances certainly does not suggest that the jury found some such circumstances and then failed to consider them

found beyond a reasonable doubt that the mitigating circumstances did not outweigh the aggravating factors, and that the aggravating factors were sufficiently substantial to call for imposition of the death penalty. The jury recommended execution, *see* N.C.G.S. § 15A–2000(b) and (c). Accordingly, the trial judge imposed the death sentence.

In an extensive opinion, the North Carolina Supreme Court reviewed Barfield's numerous contentions. *State v. Barfield,* 298 N.C. 306, 259 S.E.2d 510 (1979). It found no error in either stage of Barfield's bifurcated trial. The Supreme Court of the United States denied a petition for a writ of certiorari, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1137 (1980).

Thereafter, Barfield sought post-conviction relief in North Carolina and an evidentiary hearing was held, during which the testimony of many witnesses was taken. The hearing judge filed extensive findings of fact and conclusions of law and denied the requested relief. The North Carolina Supreme Court denied a petition for a writ of certiorari, and the Supreme Court of the United States again denied such a petition to it. *Barfield v. North Carolina,* 454 U.S. 957, 102 S.Ct. 494, 70 L.Ed.2d 261 (1981).

Barfield sought a federal writ of habeas corpus, but it was denied in a lengthy opinion giving meticulous attention to each of Barfield's claims. *Barfield v. Harris,* 540 F.Supp. 451 (E.D.N.C.1982).

## II.

In the sentencing phase of the trial, the jury, of course, was aware of the evidence of the four earlier homicides. The North Carolina statute provides that the jury sitting in the guilt phase of the trial will be the jury in the sentencing phase, unless it cannot be reconvened. N.C.G.S. § 15A–2000(a)(2). It also provides that all of the evidence submitted in the guilt determination phase of the trial shall be competent for the jury's consideration in the sentencing phase. N.C.G.S. § 15A–2000(a)(3).

in striking a balance with the aggravating cir-

Moreover, the evidence of the four earlier homicides was relevant to the jury's consideration of the statutory aggravating circumstances. It was particularly relevant to the jury's consideration of the aggravating factor that the crime was "especially heinous, atrocious, or cruel."

There was testimony of Taylor's suffering during the few days that he survived after he was first poisoned. She took him to the hospital once where he was treated and released, apparently with no suspicion on the part of the physicians that he was suffering from arsenic poisoning. Mrs. Barfield, of course, did not tell them. He was returned to the hospital by ambulance on the day of his death when the emergency attendants found him wild. He uttered a loud scream.

The suffering of three of the earlier victims had also been described in some detail. Mr. Lee had lingered for more than a month after Mrs. Barfield first began to administer the poison to him. She not only failed to assist the physicians in the treatment of Taylor when it might have saved his life, but from her earlier experience she knew when she began to administer the poison to him that victims of arsenic poisoning suffered intense pain and distress over a considerable period of time. She must have been acutely aware of all that when she purchased the ant poison and began to administer it to Taylor in his tea and in his beer. She was under no misimpression that death from poisoning might be relatively swift or painless.

Though the jury was carefully instructed that the aggravating circumstances that they might consider were those three submitted to it and the jury's written verdict was responsive to those considerations, there is still the possibility, urged by Mrs. Barfield, that the jury considered the fact of the four earlier homicides as non-statutory aggravating circumstances. It would be remarkable if the fact of those four earlier homicides did not substantially color the

cumstances.

jurors' thinking as they performed their sentencing function.

■ A jury considering the sentence in a capital case in North Carolina may consider only statutory aggravating circumstances. *State v. Silhan,* 302 N.C. 223, 273, 275 S.E.2d 450, 484 (1981). If, then, the jury did consider the four prior homicides as independent, non-statutory aggravating circumstances, there was a violation of North Carolina law. The federal courts, however, have no jurisdiction to review decisions of North Carolina's courts on matters of state law. Our jurisdiction is limited to a consideration of federal constitutional questions arising in the course of state criminal prosecutions, and a jury's consideration of non-statutory aggravating circumstances is not a violation of any provision of the federal Constitution whether or not such consideration is forbidden by state law.

*Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), suggests that a jury's consideration of non-statutory aggravating circumstances is not a violation of any federal constitutional provision. The suggestion became the Court's holding in *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). In *Zant,* the jury had found the existence of three statutory aggravating factors, but the statute with respect to one of those factors was subsequently held to be unconstitutionally vague. The Court held that any error was harmless, however, because the evidence used to prove the existence of the vague aggravating factor could have been considered by the jury as establishing a non-statutory aggravating factor.

**2.** The Court's holding is derived from two opinions. *See Barclay v. Florida,* at ——, 103 S.Ct. at 3426–3427 (Rehnquist, J., plurality opinion) and at ——, 103 S.Ct. at 3433–3434 (Stevens, J., concurring).

**3.** The final paragraph of its opinion, occupying twenty-one pages in the S.E.2d Reporter, reads as follows:

We do not take lightly the responsibility imposed on us by G.S. 15A–2000(d)(2). We have combed the record before us. We have carefully considered the briefs and arguments which have been presented to us. We

The Georgia statute under consideration in *Zant* did not foreclose jury consideration of non-statutory aggravating circumstances, but *Barclay v. Florida,* —— U.S. ——, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), presented the precise situation with which we are met. Florida law did confine the judge, who determines the sentence in Florida, to a consideration of statutory aggravating circumstances. The judge in *Barclay* had considered the defendant's prior criminal record, which was not a statutory aggravating circumstance. Any consideration of it was a violation of state law. *Mikenas v. State,* 367 So.2d 606, 610 (Fla. 1978). The Supreme Court held that the judge's consideration of defendant's prior criminal record may have been a violation of Florida law, but it was not a violation of that defendant's Eighth and Fourteenth Amendment rights.[2]

■ *Barclay* controls the result here. At most, there was an error in the application of state law. Jury consideration of non-statutory aggravating factors, as long as they relate to the character of the defendant and to the crime he committed, does not violate the Constitution of the United States.

### III.

■ The North Carolina Supreme Court indicated that it conducted a proportionality review of Mrs. Barfield's sentence. It said that it found the sentence neither excessive nor disproportionate in light of the manner in which the murder was accomplished and Mrs. Barfield's conduct after the administration of the poison to Taylor.[3] Neverthe-

conclude that there is sufficient evidence in the record to support the jury's findings as to the aggravating circumstances which were submitted to it. We find nothing in the record which would suggest that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. The manner in which death was inflicted and the way in which defendant conducted herself after she administered the poison to Taylor leads us to conclude that the sentence of death is not excessive or disproportionate considering both the crime and the defendant. We, therefore, decline to exercise

less, it is contended on behalf of Mrs. Barfield that the North Carolina Supreme Court did not identify the pool of cases it used for comparison purposes, and that it has no systematic means for identifying and retrieving appropriate cases for comparison. The Constitution of the United States, however, requires neither of those things.

Appellate review to insure that a death sentence is neither excessive nor disproportionate is of some importance in insuring that the sentence was not imposed in an arbitrary or capricious fashion.[4] Nevertheless, the Supreme Court has not required reviewing state appellate courts to identify or list the cases it used for comparison purposes. Neither in *Proffitt v. State*, 315 So.2d 461 (Fla.1975), nor *Jurek v. State*, 522 S.W.2d 934 (Tex.1975), did the state Supreme Court identify or list the cases it used for comparison purposes, but the death sentence in each case was affirmed. *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Finally, in *Barclay v. Florida*, —— U.S. ——, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), the Supreme Court affirmed the death sentence though the Supreme Court of Florida did not even mention proportionality review in either of the opinions written on the two occasions that case was before the court. *Barclay v. State*, 343 So.2d 1266 (Fla.1977); *Barclay v. State*, 411 So.2d 1310 (Fla.1981).

There is little doubt that at least some of the justices are reluctant to accept conclusional findings of proportionality without a demonstration of the willingness of that state supreme court to overturn death sentences. The Supreme Court of North Carolina fully qualifies on that score.

By the time the opinion in Mrs. Barfield's case was handed down, the Supreme Court of North Carolina had handed down opinions in thirteen first degree murder cases tried under its new death penalty statute. In five of those, the death penalty had been imposed, while a life sentence had been imposed in the remaining eight cases. The death sentence imposed in each of the five cases had been stricken by the Supreme Court of North Carolina. Mrs. Barfield's was the first case in which it upheld the death sentence under the new statute. By the time Mrs. Barfield filed her petition for federal habeas corpus, the North Carolina Supreme Court had reviewed imposition of the death sentence in seventeen cases and had upheld the death sentence in only six of those cases, one of which, of course, was Mrs. Barfield's.[5]

■ It is evident that the Supreme Court of North Carolina does take seriously its duties of appellate review of death sentences, including review for excessiveness or disproportionality. In its lengthy opinion, it addressed each of Mrs. Barfield's claims with care and patience, and we can find no federal constitutional deficiency in the manner in which it executed its appellate duties.

## IV.

There was nothing arbitrary or capricious in the imposition of the death penalty in Mrs. Barfield's case. Since the North Carolina Supreme Court properly performed its

our statutory discretion to set aside the sentence imposed.

4. See, e.g., *Gregg v. Georgia*, 428 U.S. 153, 206, 96 S.Ct. 2909, 2940, 49 L.Ed.2d 859 (1976) (Stewart, J., plurality opinion); *Proffitt v. Florida*, 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976) (Powell, J., plurality opinion).

5. The six cases in which the North Carolina Supreme Court voted to affirm the imposition of the death sentence prior to Barfield's filing of the petition for a federal writ of habeas corpus are as follows: *State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761 (1981); *State v. Rook*, 304 N.C. 201, 283 S.E.2d 732 (1981), cert. denied, 455 U.S. 1038, 102 S.Ct. 1741, 72 L.Ed.2d 155 (1982); *State v. Hutchins*, 303 N.C. 321, 279 S.E.2d 788 (1981); *State v. Martin*, 303 N.C. 246, 278 S.E.2d 214, cert. denied, 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981); *State v. McDowell*, 301 N.C. 279, 271 S.E.2d 286 (1980), cert. denied, 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 220 (1981); *State v. Barfield*, 298 N.C. 306, 259 S.E.2d 510 (1979), cert. denied, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1137 (1980).

appellate review function, there is no basis for federal interference.

### V.

Numerous other contentions are advanced on Mrs. Barfield's behalf, but all of these other contentions were more than adequately handled by the district judge in his opinion, *Barfield v. Harris,* 540 F.Supp. 451 (E.D.N.C.1982). As to those contentions, we affirm for the reasons stated by the district judge.

We find no constitutional error in either the guilt determining or sentencing phases of Mrs. Barfield's trial. We conclude that the petition for the writ of habeas corpus was properly denied.

AFFIRMED.