### UNITED STATES of America, Plaintiff–Appellee,

v.

### Jeremy INGLESI, Defendant–Appellant.

No. 92–5208.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1992.

Decided March 15, 1993.

---

Rebecca Anne Mathews, Charleston, WV, argued, for defendant-appellant.

Phillip B. Scott, Office of the U.S. Atty., Charleston, WV, argued (Michael W. Carey, U.S. Atty., J. Kirk Brandfass, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and SPROUSE, Senior Circuit Judge.

OPINION

PHILLIPS, Circuit Judge:

Jeremy Inglesi appeals the sentence imposed when he pled guilty to an indictment for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 846. He contends that the district court violated his Fifth Amendment rights to due process and equal protection of the law by relying on a presentence report that factored his Ohio juvenile record into his criminal history calculation in accordance with U.S. Sentencing Commission, *Guidelines Manual* § 4A1.2(d) (November 1991). We find no reversible error and affirm.

## I

It is uncontested that, despite repeated requests from Inglesi's counsel and two continuations of his sentencing hearing, the State of Ohio never released copies of Inglesi's juvenile record to counsel, to the court, or to Timothy Casey, the probation officer who prepared Inglesi's presentence report. Instead, a probation officer reviewing the record in Ohio relayed its contents to Casey. When Inglesi objected to the inclusion of the juvenile convictions in the presentence report, the Ohio probation officer reviewed the juvenile record again to confirm the report's accuracy.

Based on this review, Casey answered Inglesi's objections in an Addendum to the presentence report and assured the district court at Inglesi's sentencing hearing that the report was reliable. The court then accepted the report as offered, denying Inglesi's motion to strike the reference to his juvenile record. The report combined a criminal history category of IV with an offense level of 24, recommending a guideline sentencing range of 77–96 months. *Guidelines Manual* §§ 2D1.4, 4A1.1. Inglesi received a 26–month downward departure for cooperating with the government, yielding a final sentence of 51 months' imprisonment and four years' supervised release. This appeal followed.

## II

 Inglesi argues first that the district court effectively incorporated in its sentencing process a due process violation committed by the State of Ohio when it failed to perform a statutory duty to seal the juvenile record or to notify Inglesi of his right to have it sealed. Ohio Rev.Code § 2151.358(C). This argument fails. A mere violation of state law, standing alone, does not violate the United States Constitution; to have that effect it must "rise for some other reason to the level of a denial of rights protected by [that] Constitution." *Barclay v. Florida,* 463 U.S. 939, 957–58, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983); *Barfield v. Harris,* 719 F.2d 58, 61 (4th Cir.1983) *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984). The

violation alleged here does not rise to that level.

 Due process may be violated in sentencing by the use of inaccurate information, *United States v. Headspeth,* 852 F.2d 753, 755 (4th Cir.1988), but no inaccuracy has been shown here. Inglesi's challenge is essentially to the information's use; he only disputed the presentence report's accuracy in the one respect that it showed that he was not, as he claimed, once sentenced in absentia. As to this one disputed point, the district court properly inquired into and accepted the accuracy of the report's representation, J.A. 13–14, 26. This satisfied both the constitutional requirement of accuracy and the fact-finding requirement of Fed.R.Crim.Proc. 32(c)(3)(D). *See United States v. Terry,* 916 F.2d 157, 162 (4th Cir.1990).

 Due process might also be denied by sentencing on information whose accuracy a defendant has not had a fair opportunity to challenge, and Inglesi argues that this is what occurred here, pointing to his counsel's lack of copies of his juvenile record, and citing *United States v. Curran,* 926 F.2d 59, 61–62 (1st Cir.1991), where such a denial was found. But unlike the defendant in *Curran,* Inglesi had ample opportunity to challenge the presentence report's representation of his juvenile record. Sentencing was continued twice on defense counsel's motion in order for counsel to confirm the accuracy of that representation. J.A. 13. No contention is made that confirmation was impossible by reason of factors beyond counsel's control. Indeed, on oral argument in this court, counsel conceded that Inglesi, at her direction, was able personally to inspect his Ohio records for accuracy and to report his inspection to her. Under the circumstances, the court did not err in failing *sua sponte* to order release of the records for court use.

 Finally, Inglesi argues that the Sentencing Guidelines (specifically, we presume, § 4A1.2(d)) violate his Fifth Amendment right to equal protection by creating two classes of similarly situated defendants

who are subject to gross disparities in sentencing depending on whether their juvenile records are accessible for incorporation into criminal history calculations—that is, depending upon whether or not defendants live in states that seal such records. Inglesi maintains that this classification and the resulting disparities have no rational basis, *see, e.g., United States v. Roberts*, 915 F.2d 889, 891 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991), but instead actually confound the Sentencing Guidelines' primary purpose of fostering uniformity and fairness in sentencing.

We reject this constitutional challenge, noting at the outset that in the sentencing context, "an argument based on equal protection essentially duplicates an argument based on due process," *Chapman v. United States*, —— U.S. ——, ——, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524 (1991), and that the relevant due process inquiry on such a challenge is only whether the sentence at issue is "based on an arbitrary distinction," or, instead, on "a rational sentencing scheme." *Id.* at ——, ——, 111 S.Ct. at 1927, 1928.

Here we conclude that any distinction in sentencing potential resulting from the availability of some but not all state juvenile records for use in federal sentencing under the provisions of Guidelines § 4A1.2(d) is not an arbitrary one but is based on a rational sentencing scheme. In the first place, Inglesi does "not claim that the sentencing scheme at issue here has actually produced an arbitrary array of sentences, nor did [his] motions in district court contain any proof of actual disparities in sentencing." *Chapman*, —— U.S. at ——, 111 S.Ct. at 1928. His challenge is based solely on the inherent potential for disparities arising from the uneven availability of state court juvenile records. But the Sentencing Guidelines, taking specific note of the fact that "[a]ttempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records," *Guidelines Manual* § 4A1.2 comm. n. 7, significantly limit the types of juvenile convictions that may be counted for criminal history purposes. First off, to avoid disparities that would result simply from the fact that different states use different ages in defining juveniles, § 4A1.2(d) does not borrow state categories of "juvenile" offenses, but uses the single category, "Offenses Committed Prior to Age Eighteen," whether or not by one then a "juvenile" under state law. Within this universe of youthful offenses, the possibility of large disparities is further flattened by allowing only those that resulted in adult sentences of imprisonment exceeding thirteen months, or in adult or juvenile sentences or releases from confinement of those sentences within five years of commencement of the federal offense of conviction. *Id.*

So constrained, and in the absence of any evidence of an actual array of significant disparities resulting from this particular scheme for counting youthful offenses, we conclude that it is not arbitrary but bears a rational relationship to the goal of having sentences accurately reflect a defendant's past behavior, which is "a critical factor in sentencing when determining a possible potential for rehabilitation." *United States v. Madison*, 689 F.2d 1300, 1315 (7th Cir. 1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983), (*cited in United States v. Bucaro*, 898 F.2d 368, 373 n. 8 (3d Cir.1990)).

Accordingly, we find no equal protection/due process violation in the use of Inglesi's Ohio juvenile records in determining his criminal history for sentencing purposes pursuant to Guidelines § 4A1.2(d).

AFFIRMED.