Margie Velma **BARFIELD**, Appellant,

v.

James C. **WOODARD**, Secretary of Corrections; Nathan A. Rice, Warden; Rufus Edmisten, Attorney General, Appellees.

No. 84–4007.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 1, 1984.

Decided Nov. 1, 1984.

Richard H. Burr, West Palm Beach, Fla., for appellant.

Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C. (Barry S. McNeill, Joan H. Byers, Asst. Attys. Gen., Raleigh, N.C., on brief), for appellees.

Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.

PER CURIAM.

This is an appeal by Margie Velma Barfield from judgment of the United States District Court for the Eastern District of North Carolina denying her petition, for writ of habeas corpus and her application for a stay of execution of a death sentence imposed by the State of North Carolina which is scheduled to be carried out at 2:00 a.m. on Friday, November 2, 1984.

We have heard this appeal on an expedited basis pursuant to procedures and on a record composed as provided in Local Rule 22(b) of this court. That record consists, *inter alia*, of all the papers filed in connection with Barfield's efforts to exhaust her available remedies in the state courts of North Carolina preliminary to raising the issues then sought to be raised by her federal habeas corpus petition, the papers filed in the habeas corpus proceeding in the United States District Court, including the order of that court denying her petition and her application for stay of execution, and memoranda of counsel submitted at various stages of the proceedings. The district court's order was entered at 7:22 p.m. on October 31, 1984, and by consent of counsel for both parties, we heard oral arguments in the appeal at 8:30 a.m. on November 1, 1984, in Richmond, Virginia.

We affirm the judgment denying her petition for habeas corpus relief, and we deny her application for a stay of execution.

I

Because the overall course of proceedings is an important consideration in our acting on this, or any, finalhour effort to avoid execution of a state's death sentence, we outline that course here in some detail and at a length we think warranted.

Margie Velma Barfield was indicted on March 28, 1978, for the first degree murder of Stewart Taylor, by a Robeson County, North Carolina grand jury. Because of pretrial publicity, the venue of the case was transferred to a county adjoining the indictment county. Barfield was tried at a November 27, 1978, Special Criminal Session of state superior court and was found guilty by a jury of the first degree murder of Taylor. The trial was presided over by Judge Henry A. McKinnon, one of the state's most experienced and respected trial judges.

Later that day, a sentencing hearing was held before the same jury to determine if Barfield's sentence on the murder conviction would be death or life imprisonment. The State offered no additional evidence. Barfield presented evidence tending to show a pattern of drug abuse after her first husband's death in 1969. Judge McKinnon also presided over the sentencing phase.

From the evidence, the jury found three aggravating circumstances: that the murder of Stewart Taylor (1) was committed for pecuniary gain; (2) was committed to hinder the enforcement of the law; and (3) was especially heinous, atrocious or cruel. Finding that the aggravating circumstances outweighed the mitigating ones and were sufficiently substantial to call for the death penalty, the jury recommended that Barfield be sentenced to death.

Pursuant to this recommendation, on December 2, 1978, Judge McKinnon sentenced Barfield to death by asphyxiation. The execution date originally was set for February 9, 1979.

Barfield appealed directly to the North Carolina Supreme Court. On appeal, Barfield raised the following issues: (1) denial of appointment of additional counsel; (2) improper denial of motion for change of venue to the western part of the state; (3) the moving of her case from Scotland County to Bladen County; (4) denial of a continuance; (5) refusal to grant her motion for an individual *voir dire;* (6) the State's challenge for cause of certain jurors who voiced ambivalence toward the death penalty; (7) the admission of evidence tending to show that she was responsible not only for the poisoning death of Stewart Taylor, but also for the poisoning

deaths of John Henry Lee, Dolly Taylor Edwards, Lillie McMillan Bullard and Jennings Barfield; (8) prosecutorial misconduct; (9) the admission into evidence of a bottle of rat poison and various checks Barfield was alleged to have forged upon the accounts of Stewart Taylor and John Henry Lee; (10) the foundations for the expert testimony about the cause of death of Taylor, Edwards, Lee and Jennings Barfield; (11) denial of her motion to suppress the confessions given by her to the investigating officers; (12) the trial court's failure to submit the defense of insanity to the jury; (13) denial of her motion to dismiss, motion for directed verdict, motion to set aside the verdict, motion for new trial, and motion for mistrial; and (14) the unconstitutionality of North Carolina's capital punishment statutes because the death penalty amounts to cruel and unusual punishment, the sentencing procedure is mandatory, the aggravating and mitigating circumstances are too vague, and the State ought to be required to prove the absence of mitigating circumstances.

During the pendency of the appeal, Barfield's execution was stayed by the North Carolina Supreme Court in order to allow her to pursue the automatic appellate review of her conviction and sentence. On November 6, 1979, the Supreme Court, in a lengthy, unanimous decision written by Justice Britt, found no error in the trial or sentence, and concluded that the sentence of death was not excessive or disproportionate considering both the crime and the defendant. *State v. Barfield*, 298 N.C. 306, 259 S.E.2d 510 (1979).

On November 13, 1979, Barfield filed in the North Carolina Supreme Court a motion for stay of execution of her death sentence pending her petition to the United States Supreme Court for a writ of certiorari. On November 14, 1979, Chief Justice Branch entered an order staying the execution pending further order.

On April 3, 1980, Barfield filed a petition for writ of certiorari in the United States Supreme Court seeking review of the constitutional issues raised on her direct appeal to the North Carolina Supreme Court. The Court summarily denied certiorari on June 30, 1980. *Barfield v. North Carolina*, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1137 (1980). Her petition for rehearing was denied on September 17, 1980. *Barfield v. North Carolina*, 448 U.S. 918, 101 S.Ct. 41, 65 L.Ed.2d 1181 (1980).

On September 29, 1980, Justice Carlton of the North Carolina Supreme Court entered an order terminating the stay by Chief Justice Branch. Barfield's execution was rescheduled for October 17, 1980.

On October 3, 1980, Barfield filed a motion for appropriate relief under the state's postconviction procedures, in a state superior court, alleging: (1) ineffective assistance of counsel; (2) denial of a fair trial by the introduction at her trial of evidence concerning the other four homicides committed by her; (3) the admission into evidence at trial of her confessions; (4) the trial court's instructions to the jury on the elements of first and second degree murder; (5) the aggravating circumstances submitted to the jury during the sentencing phase; (6) the trial court's failure to instruct the jury at the sentencing phase to disregard the other homicides; (7) the trial court's failure to advise the jurors of their failure to reach a unanimous verdict as to sentence; (8) the trial court's failure to instruct the jury that they could recommend mercy even if they found aggravating circumstances; (9) the exclusion of prospective jurors for cause solely on the basis of their opposition to capital punishment; (10) the exclusion for cause of a juror who expressed general opposition to the death penalty; (11) the North Carolina Supreme Court's failure to conduct a proportionality review of her sentence; (12) her death sentence is unconstitutional because race of the victim is a determining factor whether a capital defendant is sentenced to life or death; and (13) North Carolina capital punishment statutes are unconstitutional.

Simultaneously, Barfield filed a motion for stay of her execution pending the hearing of her motion for appropriate relief.

On October 8, 1980, Superior Court Judge Braswell, entered an Order granting the stay of Barfield's execution, and setting her motion for appropriate relief for a plenary evidentiary hearing.

The evidentiary hearing was held before Judge Braswell during the week of November 17, 1980. In a 37-page judgment containing findings of fact and conclusions of law, Judge Braswell denied Barfield's motion for appropriate relief on November 26, 1980.

The stay of execution previously entered by Judge Braswell was dissolved, and December 12, 1980, was set as the new execution date.

On December 2, 1980, Barfield filed a petition for writ of supersedeas in the North Carolina Supreme Court requesting that her execution be stayed pending the filing and disposition of her petition for writ of certiorari. On December 3, 1980, the North Carolina Supreme Court granted the petition and stayed the execution.

Barfield's petition for writ of certiorari was filed in the North Carolina Supreme Court on May 15, 1981. The petition was denied on July 8, 1981. The North Carolina Supreme Court also dissolved the writ of supersedeas previously entered.

On July 23, 1981, a hearing was held to fix a new date for Barfield's execution. Judge Braswell set the execution date as October 21, 1981, 90 days from the date of the hearing.

On September 8, 1981, Barfield filed a petition for writ of certiorari in the United States Supreme Court seeking review of the decisions of the state courts in the postconviction proceedings. The issue sought to be reviewed by the petition was the following:

Whether a capital sentencing scheme which fails to inform the jury of the mandatory consequences under state law of their inability to reach a unanimous verdict on punishment violates the eighth and fourteenth amendments?

Because of the approaching execution date, and because her petition was still pending before the United States Supreme Court on October 1, 1981, Barfield filed in the North Carolina Supreme Court another petition for writ of supersedeas seeking to stay her execution pending a decision by the United States Supreme Court on her petition for writ of certiorari. The North Carolina Supreme Court allowed the writ of supersedeas on October 6, 1981.

On October 19, 1981, the United States Supreme Court denied Barfield's second petition for writ of certiorari. *Barfield v. North Carolina*, 454 U.S. 957, 102 S.Ct. 494, 70 L.Ed.2d 261 (1981).

On October 22, 1981, Barfield filed in the United States Supreme Court an application for suspension of the Court's order denying certiorari pending her filing and the disposition of her petition for rehearing. Chief Justice Burger granted the request on October 26, 1981.

On November 10, 1981, Barfield filed her petition for rehearing. The United States Supreme Court denied rehearing on December 7, 1981. *Barfield v. North Carolina*, 454 U.S. 1117, 102 S.Ct. 693, 70 L.Ed.2d 655 (1981).

Following the denial of rehearing, on December 10, 1981, the North Carolina Supreme Court ordered that the previously allowed writ of supersedeas be dissolved, and remanded the case to the superior court to fix a new date for Barfield's execution.

The hearing was held before Judge Giles Clark on December 22, 1981. Judge Clark set the new execution date for March 22, 1982.

Thirteen days prior to her scheduled execution, on March 9, 1982, Barfield filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of North Carolina, Raleigh Division. Contemporaneously, she filed an application for stay of her execution pending the disposition of her habeas corpus petition.

On March 12, 1982, the Honorable Franklin T. Dupree, Jr., United States District

Judge, granted Barfield's motion for stay pending further order of the court.

A hearing was held before Judge Dupree on March 26, 1982. Barfield's main contention was that she had received ineffective assistance of counsel because her attorney failed to investigate and present psychiatric evidence; failed to develop general mitigating evidence; failed to file additional motions; made an ineffective jury argument; failed to request certain jury instructions; and failed to raise numerous errors on direct appeal. Barfield also claimed that (1) the exclusion of jurors on the ground that they opposed the death penalty violated her right to a trial by an impartial jury drawn from a representative cross-section of the community; (2) a juror was unconstitutionally excluded for cause in that he never stated unequivocally that he could not vote for the death penalty under any circumstances; (3) the trial court erred in admitting evidence tending to show that she was responsible for the poisoning deaths of four other individuals; (4) her confession was illegal and erroneously admitted into evidence; (5) the trial court, in its instructions to the jury, did not sufficiently differentiate first and second degree murder; (6) the state's murder statute contains an impermissible presumption that a murder by poisoning is premeditated; (7) during the sentencing phase, the trial court failed to instruct the jury not to consider the evidence of the other murders when deliberating upon sentence; (8) the jury arbitrarily and impermissibly compounded the aggravating factors of "pecuniary gain" and "hindering the enforcement of the laws"; (9) the submission of the "especially heinous, atrocious, or cruel" aggravating circumstance was impermissible because not sufficiently limited; (10) the trial court should have submitted additional mitigating circumstances which were supported by the evidence; (11) the trial court failed adequately to differentiate between the mitigating circumstances of mental and emotional disturbance and diminished impairment, and between those circumstances and the test for legal insanity; (12) the death sentence is invalid because the trial court failed to elaborate various plausible nonstatutory mitigating circumstances; (13) the trial court erred in failing to instruct the jury that the burden of proof on mitigating circumstances was by a preponderance of the evidence; (14) the trial court failed to instruct the jury correctly concerning the independent role to the given mitigating circumstances; (15) the trial court inaccurately summarized Barfield's proof in mitigation; (16) the trial court failed to tell the jury of the result should it be unable to reach a unanimous verdict; (17) the North Carolina Supreme Court did not adequately engage in mandatory proportionality review of her sentence compared to other cases; and (18) her death sentence is unconstitutional because arbitrarily administered in North Carolina.

In a lengthy opinion filed on May 21, 1982, Judge Dupree denied Barfield's petition for writ of habeas corpus. *Barfield v. Harris*, 540 F.Supp. 451 (E.D.N.C.1982).

On June 9, 1982, Barfield gave notice of appeal, and on June 11, 1982, Judge Dupree issued a certificate of probable cause to appeal to this court.

On that appeal Barfield raised most of the same issues that had been presented to the district court, but her principal arguments on appeal were (1) that the jurors' knowledge of her former crimes impermissibly infected their decision to impose the death penalty since former criminal conduct is not a statutory aggravating circumstance in North Carolina, and (2) that the North Carolina Supreme Court did not adequately perform its statutory duty to conduct a proportionality review of her sentence.

On October 3, 1983, in a unanimous decision written by Senior Circuit Judge Haynsworth, this court affirmed the district court's denial of the petition for writ of habeas corpus, finding "no constitutional error in either the guilt determining or sentencing phase of Mrs. Barfield's trial." *Barfield v. Harris*, 719 F.2d 58 (4th Cir. 1983).

A petition for rehearing and suggestion for rehearing en banc was denied by this court on November 22, 1983.

On November 28, 1983, Barfield filed in this court a motion for stay of mandate pending her application to the United States Supreme Court for a writ of certiorari. The motion was denied on December 1, 1983.

On February 8, 1984, Barfield filed in the United States Supreme Court an application for extension of time within which to file her petition for writ of certiorari. On February 10, 1984, Chief Justice Burger entered an order extending the time up to and including March 31, 1984.

On March 31, 1984, Barfield filed her petition for writ of certiorari in the United States Supreme Court. The petition raised four questions: (1) whether the trial court's instructions on murder by poisoning removed the element of intent from the jury's consideration; (2) whether the trial court's instructions during the sentencing phase prevented the jury from considering mitigating circumstances; (3) whether the state properly excluded for cause a prospective juror who made the equivocal assertion that he did not believe he could consider imposing the death sentence; and (4) whether she received ineffective assistance of counsel at sentencing.

On May 21, 1984, the United States Supreme Court entered an order denying the petition for writ of certiorari. *Barfield v. Harris,* — U.S. —, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984).

On May 25, 1984, the State filed a motion in the United States District Court for the Eastern District of North Carolina, Raleigh Division, seeking to dissolve the stay of execution previously entered by Judge Dupree. On June 6, 1984, Judge Dupree entered an order dismissing the State's motion as moot, based on his view that since the proceedings were "at an end," the stay had expired automatically.

A hearing to set a new execution date for Barfield was held before State Superior Court Judge Farmer on June 13, 1984.

Judge Farmer set the date for Friday, August 31, 1984, between the hours of 12:01 a.m. and 11:59 p.m.

On June 15, 1984, Barfield again filed in the United States Supreme Court a petition for rehearing, an application for stay of execution, and an application for suspension of the Court's order denying her petition for writ of certiorari. Her petition for rehearing was based on the juror exclusion issue previously raised, and two cases pending before the Court.

On July 2, 1984, the Court granted Barfield's application for stay of execution pending further order of the court. The Court also directed the State to file a response to the petition for rehearing within 30 days.

Following response by the State, on August 16, 1984, the Court entered an order denying the petition for rehearing. *Barfield v. Harris,* — U.S. —, 105 S.Ct. 28, 82 L.Ed.2d 920 (1984).

On August 22, 1984, another hearing was held to set a new execution date for Barfield. Judge Clark set the execution for Friday, November 2, 1984, between the hours of 12:01 a.m. and 11:59 p.m.

On October 29, 1984, only four days before her scheduled execution date, Velma Barfield filed a second motion for appropriate relief under the state's postconviction procedures. She raised as issues that (1) she was incompetent to proceed at the time of her trial due to withdrawal from prescription drugs; (2) the argument of the prosecutor during the sentencing stage was improper and deprived her of her right to individualized sentence determination; (3) she was deprived of her statutory right to a sentencing determination in which the sentencer considered only evidence relevant to the statutory aggravating circumstances; (4) a juror was improperly excused for cause under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (5) she was deprived of her right to a representative, impartial jury, reflective of contemporary community values by the death qualification of the jury; and (6) she was deprived of an individualized sentenc-

ing determination due to the alleged exclusion, at trial, of certain evidence during the penalty phase of her original trial. As reflected in this summary of proceedings, Issues (2), (3), (4), (5), and (6) had been previously litigated either on direct appeal or on collateral review. Issue (1) had never been raised in any prior proceeding. On October 30, 1984, State Superior Court Judge Ellis found the motion for appropriate relief to be procedurally barred, abusive of the postconviction act, and unlikely to be meritorious, and dismissed the motion without hearing evidence.

Barfield then petitioned the Supreme Court of North Carolina for a stay and for the Court to issue its writ of certiorari to review Judge Ellis's order. The North Carolina Supreme Court denied the motion for stay and petition for writ of certiorari on the evening of October 30, 1984. Two justices noted dissents from the brief order. No opinions were filed so far as we are aware.

Barfield then commenced in federal district court this, her second petition for habeas corpus under 28 U.S.C. § 2254, on October 30, 1984. The petition raised the issues raised and rejected in the state proceedings just summarized. Following a hearing on October 31, 1984, Judge Dupree entered his orders denying relief from which this appeal was taken and granted a certificate of probable cause to appeal.

This case has not been characterized by any rush to execution that might draw in question the general fairness of the procedures for direct and collateral review provided by the courts, both state and federal.

## II

Two of Barfield's claims in this petition were raised and rejected on the merits in her earlier § 2254 petition: the *"Witherspoon"* claim relating to the exclusion of a juror for cause and the *"Witherspoon*-extension" claim related to the death-qualified composition of the jury. Three are said by petitioner to be new claims not previously raised: the trial competency claim; the prosecutorial misconduct claim;

and the mitigating factor evidence claim. Of these latter three, counsel has conceded that with respect to the last, counsel was in a position to raise it but simply overlooked it in the earlier petition. The other two of these, competency to stand trial and prosecutorial misconduct, are said to be excused from earlier presentation by exigencies which make the failures not inexcusably neglectful, hence not abuses of the writ.

Judge Dupree, denying the petition, held that all of the claims but the competency to stand trial claim must be dismissed as either successive or abuses of the writ under Rule 9(b) of the Rules Governing Habeas Corpus Cases.

Upon a careful consideration of the authorities and of the record, we agree. Specifically we affirm dismissal of the *Witherspoon* claims, without again addressing their merits as impermissibly successive. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). And we affirm dismissal of the prosecutorial misconduct claim as arguably also successive, and if not fairly treated as successive, as an abuse of the writ. *See Hutchins v. Woodard*, 730 F.2d 953 (4th Cir.1984).

The incompetency to stand trial claim remains. With Judge Dupree we have thought it the claim requiring most careful attention. Indeed at oral argument on this appeal counsel for petitioner pressed it as the most serious claim presented and confined oral argument to it. Upon consideration, we affirm the district court's rejection of it on the merits, preferring as did that court not to dismiss it as an abuse of the writ, though newly raised. *But cf. Woodard v. Hutchins*, —— U.S. ——, 104 S.Ct. 752, 79 L.Ed.2d 207 (1984) (abuse of writ in belated raising of new theory of claim on basis of recent scientific knowledge).

This claim is based upon the following factual assertions related to petitioner's legal competency to stand trial. After March 13, 1978, when she was arrested, she began a year long withdrawal from drugs which she had abused for ten years; some of these drugs are of the benzodiaze-

pine family "B drugs" with the withdrawal from those now being recognized as "interfer[ing] with a person's ability to appreciate and respond rationally to the circumstances of his or her life," including a state of feeling unreal and flight of ideas; this withdrawal lasted through trial into the first two to three months in prison; and this was not then apparent because it was not a well-known medical phenomenon at the time.

Five documents are offered in support of this contention: (1) petitioner's affidavit describing physical symptoms of weakness, lightheadedness, sweatiness, nausea, painful feeling under the skin, suffocating feelings, tenseness, severe headaches and stiff neck, but noting the medication made these "not as bad" and that she hoarded her medication for trial; (2) the affidavit of a prison minister, Frazier, noting erratic conduct for the first two or three months petitioner was imprisoned after her conviction; (3) the affidavit of a pharmacist, Graedon, describing the symptoms of B drug withdrawal, noting that they occur in about 44% of the cases and describing the literature in the field including a June 1983 article on the symptoms, a later 1970's autobiographical book *"I'm Dancing As Fast As I Can"* by Barbara Gordon, also noting the symptoms, and that medical opinions on the addictiveness of B drugs began to change in 1981; (4) a letter of Dr. William Scott, in Atlanta, in response to an October 26, 1984, telephone call from petitioner's counsel stating that he gave a paper on B drug withdrawal in 1977, that the medical evidence in petitioner's case and the current affidavits of petitioner and Rev. Frazier lead him to conclude that petitioner was "substantially impaired" in terms of her competency to understand accurately the charges against her or to cooperate in her defense; and (5) a psychiatric evaluation of June 2, 1984, by Dr. Dorothy Lewis, a New York psychiatrist, concluding petitioner has been consistently misdiagnosed over the years, and has been manic-depressive, with the result that the mania has been severely complicated by the use of anti-depressant drugs.

Petitioner alleges, as revealed in the trial transcript, that her incompetence interferred with her standing trial because (1) she argued with the district attorney on the stand and with her lawyer that the poison had not really killed her victims; (2) she argued in three other instances with the district attorney; and (3) she silently applauded the district attorney's argument.

Against this documentary evidence suggesting incompetency, respondent offered opposing affidavits of both Judge McKinnon who conducted the state murder trial and of her trial counsel that her conduct to them did not bespeak incompetency to stand trial in the legal sense. Respondent also pointed to portions of the transcript of trial in which Barfield's understanding of her situation, responsiveness to questions and general conduct clearly bespoke her competency in the legal sense. And they pointed to the fact that two contemporary psychiatric evaluations of Barfield by physicians of unquestioned ability reported that she was then competent.

On this documentary record, petitioner contends that, at the least, a genuine issue of fact was raised which entitled her to a full evidentiary hearing on the issue of her competence. We disagree. We conclude instead that considering the matter as on a summary judgment motion, the petitioner's forecast of evidence did not suffice to raise a genuine issue and that the district court properly denied her claim as a matter of law.

When the petitioner's forecast of evidence is assessed in its best possible light, in conjunction with those elements of respondent's opposing materials that are not disputed, it simply fails to raise more than a basis for bald conjecture that if the withdrawal effects now claimed to have been · discovered do indeed exist in some people, they did in Barfield's case during the very period of her trial, and with the consequences that would establish constitutionally inadequate competence to stand trial. The opposing evidence—which is not truly challenged by petitioner's—too strongly

suggests that, whatever her admittedly difficult emotional situation and possibly even somewhat impaired intellectual capacities, she was not legally incompetent to stand trial. Petitioner's claim of constitutional violation, raised at this late date, on the basis of so meager a body of inevitably disputable scientific opinion as it might apply to her condition five years ago simply does not suffice to require an evidentiary hearing nor, certainly, to require issuance of the writ, nor to justify a further stay. *See generally, Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 3393–95, 77 L.Ed.2d 1090 (1983).

JUDGMENT AFFIRMED. APPLICATION FOR STAY DENIED.